**SITHON MARITIME COMPANY,**
**Plaintiff,**

v.

**HOLIDAY MANSION, a Division of Mohawk, Inc., and Mercury Marine, a Division of Brunswick Corporation, Defendants.**

**No. CIV. A. 96–2262–EEO.**

United States District Court,
D. Kansas.

Oct. 22, 1997.

Lee M. Smithyman, Smithyman & Zakoura, Chtd., Overland Park, KS, Michael G. Chalos, Richard M. Ziccardi, George J. Tsimis, New York City, for Plaintiff Sithon Maritime Co.

Norman R. Kelly, Norton, Wasserman, Jones & Kelly, Salina, KS, Anthony M. DeMarea, Shughart, Thompson & Kilroy, Overland Park, KS, for Defendant Holiday Mansion.

Heather Suzanne Woodson, Stinson, Mag & Fizzell, P.C., Overland Park, KS, John C. Aisenbrey, Stinson, Mag & Fizzell, P.C., Kansas City, MO, Alex B. Marconi, Patrick X. Fowler, Snell & Wilmer L.L.P., Phoenix, AZ, for Defendant Mercury Marine.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on the motion for summary judgment of defendant Mercury Marine ("Mercury") on plaintiff's complaint (Doc. # 73), and defendant Mercury's motion for summary judgment on defendant Holiday Mansion's cross-claim (Doc. # 124). After careful consideration of the parties' briefs and evidentiary materials, the court is prepared to rule. For the reasons stated below, Mercury's motion on plaintiff's complaint is granted as to counts I, II, V, VIII, and IX, granted in part and denied in part as to counts IV and VII, and denied as to counts III and VI. Mercury's motion is granted as to all counts on defendant Holiday Mansion's cross-claim.

### Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. *Id.* at 252, 106 S.Ct. at 2511–12.

Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts

as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D.Kan.Rule 56.1.

In this diversity case, we ascertain and apply Kansas law with the objective that the result obtained in federal court should be the same result as in a Kansas court. *See Adams–Arapahoe School Dist. No.28–J v. GAF Corp.,* 959 F.2d 868, 870 (10th Cir.1992).

With respect to plaintiff's fraud claims under Kansas law, federal law standards for granting summary judgment apply. *See* Fed.R.Civ.P. 56. In *Anderson v. Liberty Lobby,* 477 U.S. at 252, 255, 106 S.Ct. at 2512, 2513–14, the United States Supreme Court held:

> we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.... Consequently, where the ... "clear and convincing" evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that the jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant.

Allegations of fraud must be proven by clear and convincing evidence. *See Rajala v. Allied Corp.,* 919 F.2d 610, 626 (10th Cir.1990), *cert. denied,* 500 U.S. 905, 111 S.Ct. 1685, 114 L.Ed.2d 80 (1991); *Sipes v. Crum,* 204 Kan. 591, 464 P.2d 1, 6 (1970). Thus, plaintiff as the nonmoving party carrying the burden of proof at trial must present sufficient evidence of a clear and convincing nature to withstand summary judgment on its fraud claims. *See Ramirez v. IBP, Inc.,* 913 F.Supp. 1421, 1430 (D.Kan.1995); *Sprague v. Peoples State Bank, Colby, Kan.,* 844 F.Supp. 662, 667 (D.Kan.1994); *All West Pet Supply Co. v. Hill's Pet Prods. Div., Colgate–Palmolive Co.,* 840 F.Supp. 1426, 1431 (D.Kan.1993).

### Analysis

### I. Mercury's Motion For Summary Judgment On Plaintiff's Complaint.

#### A. *Factual Background.*

For purposes of defendant's motion, the following is a brief summary of the material facts that are uncontroverted, deemed admitted, or where controverted viewed in the light most favorable to the non-movant, pursuant to Federal Rule of Civil Procedure 56 and District of Kansas Rule 56.1.

Plaintiff Sithon Maritime Company ("Sithon") was organized in December 1994 for the purpose of obtaining exclusive government issued permits to operate a high speed ferry boat service to shuttle passengers between two of three peninsulas in Northern Greece. In late 1994, Mr. Vagianos, who later became president of Sithon, began negotiating with defendant Holiday Mansion for the possible purchase of four 50–passenger ferry boats. Mr. Vagianos advised Holiday Mansion that the boats needed to achieve a cruising speed of at least 24 knots for the anticipated ferry service and that the ferry boats would run 24 hours a day.

Holiday Mansion advised Mr. Vagianos that the ferries could be powered by either two Mercury 7.3L diesel engines and Bravo III stern drives or by two Volvo diesel engines and stern drives. Mr. Byquist of Holiday Mansion advised Mr. Vagianos that the Mercury engines had more horsepower and would allow the boats to go faster than boats equipped with the Volvo engines. Mr. Byquist told Mr. Vagianos that he would contact Mercury to confirm that Mercury's engines would meet Mr. Vagianos' speed requirements. Mr. Vagianos testified that Mr. Byquist told Mr. Vagianos that he received assurances from Mercury personnel that its propulsion system would enable the Holiday Mansion ferry boats to attain a cruising speed of 24 knots and a maximum speed of 28 knots. Mr. Byquist denies making this statement to Mr. Vagianos. Mr. Byquist testified that (1) no one at Mercury told anyone at Holiday Mansion that the boats sold to Sithon would travel 24 knots cruising speed or 28 knots maximum speed when equipped with the Mercury stern drive engines; (2) no one at Mercury endorsed using the Mercury stern drive engines with the boats sold to Sithon; and (3) no one at Mercury told Holiday Mansion that the boats sold to Sithon would be a proper application for the Mercury stern drive engines.

Before purchasing the boats, Sithon requested and received from Mr. Brown of Holiday Mansion a letter representing that the boats equipped with Mercury engines would have a cruising speed of 24 knots and a maximum speed of 28 knots. Mr. Brown testified that he had no factual basis for making the representation and that he did not consult with anyone at Holiday Mansion or Mercury before making the representation.

Holiday Mansion asked Alan Fila of Mercury for the proper gear drive ratio and propeller pitch for the boats. After consulting with various Mercury employees, Mr. Fila recommended to Holiday Mansion a gear drive ratio of 1.65 to 1 with 20–pitch propellers. On or about January 5, 1995, Sithon agreed to purchase the four passenger ferry boats from Holiday Mansion. In manufacturing the boats, Holiday Mansion set the gear ratios and purchased propellers in accordance with Mr. Fila's recommendations. A Mercury field engineer visited the Holiday Mansion factory and inspected the installation of the Mercury engines and stern drives into one of the four boats.

In February 1995, Mr. Vagianos of Sithon received a copy of a Mercruiser/Mercury operation and service manual from Holiday Mansion. Warranty information is contained in the manual starting at the top of page 84. The actual "Warranty Policy" is on pages 86 and 87 and contains eleven numbered paragraphs. Paragraph 10 of the warranty policy provides:

WARRANTIES OF MERCHANTABILITY AND FITNESS ARE EXCLUDED FROM THIS WARRANTY. IMPLIED WARRANTIES ARE LIMITED TO THE LIFE OF THIS WARRANTY. SOME STATES OR COUNTRIES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS OR THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION OR EXCLUSIONS MAY NOT APPLY TO YOU.

Sithon received the four ferry boats from Holiday Mansion in April. On May 19, 1995, Sithon commenced its ferry boat operations in Northern Greece. Within days, the propulsion systems of all four boats began to experience various mechanical problems during operation. The four boats could reach speeds of only 16 knots when empty and approximately 12 to 13 knots when full.

On June 1, Holiday Mansion advised Mercury that the Mercury propulsion systems installed on Sithon's boats were not working properly. On June 5, Jim Puddy of Mercury's International Service Department concluded that the boats required a 2 to 1 gear drive ratio and that the Bravo III stern drives should be replaced with Bravo II stern drives. Mercury implemented these changes on the boats in June 1995.

On or about July 6, the propulsion systems on the Sithon ferries continued to malfunction. In particular, the hard rubber hubs of the new propellers on the Bravo II stern drives melted during operation. As a result of the propeller and other mechanical problems, Sithon was forced to take three of its four boats out of service. On July 10, another Mercury representative advised Holiday Mansion that the 2 to 1 gear drive ratio would over-torque the engines and cause propeller hubs to be more susceptible to failing. In mid-July, Mercury concluded that the passenger boats were too heavy for the Mercury engines.

On at least two occasions in July 1995, a Sithon boat lost all propulsion power. On one occasion, a Sithon boat filled with passengers broke down at sea in the middle of the night. The passengers were stranded until another boat could be located to pick up the passengers.

In early August 1995, Mercury replaced two of the 7.3L diesel engines in one of Sithon's boats with two new engines. The two new engines had lower horsepower than the original engines in an attempt to address the problems of overheating and wear. A Mercury representative observed the installation of these two new engines and conducted various tests on the boat. Mercury subsequently sent six additional engines for installation into Sithon's boats. Four of the six engines were installed. Sithon's boats

continued to experience many of the same mechanical problems in 1996.

### B. Breach Of Contract (Count VIII).

Sithon alleges that Mercury breached its contract with Sithon for the sale of the four ferry boats. Sithon claims that the following evidence establishes that a contract existed between Mercury and Sithon: (1) Mercury provided Holiday Mansion with information regarding the speed performance of the boats, (2) Mercury recommended to Holiday Mansion the gear ratio and propeller pitch size for the propulsion systems to be used on the boats, and (3) a Mercury field engineer inspected and approved the installation of the Mercury propulsion systems in Sithon's passenger boats. Sithon has failed to present sufficient evidence to raise an issue of material fact as to whether a contract for sale of the boats existed between Sithon and Mercury.

The Kansas Supreme Court has held repeatedly that "[i]n order to form a binding contract, there must be a meeting of the minds on all essential terms." *Albers v. Nelson*, 248 Kan. 575, 580, 809 P.2d 1194, 1198 (1991); *see Sidwell Oil & Gas Co., Inc. v. Loyd*, 230 Kan. 77, 79, 630 P.2d 1107, 1110 (1981). "To constitute a meeting of the minds there must be a fair understanding between the parties which normally accompanies mutual consent and the evidence must show with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract." *Sidwell*, 230 Kan. at 84, 630 P.2d at 1113 (quoting *Steele v. Harrison*, 220 Kan. 422, 428, 552 P.2d 957, 962 (1976)). Sithon has not offered any evidence which tends to establish a meeting of the minds between Mercury and Sithon regarding the terms for sale of the four ferry boats. Although Sithon contracted with Holiday Mansion, Mercury was not a party to the contract. Sithon also has failed to come forward with any evidence of the alleged terms of the sales contract between Mercury and Sithon. Mercury is not liable on the contract between Holiday Mansion and Sithon by supplying Holiday Mansion with various parts or even by recommending specific actions to be taken on Sithon's boats. Accordingly, the court will grant summary judgment in favor of defendant Mercury on count VIII of Sithon's complaint.

### C. Express Warranty Regarding Speed (Count I).

Sithon alleges that Mercury breached its express warranty that the passenger boats, if equipped with the Mercury propulsion systems, would attain a cruising speed of at least 24 knots. Sithon's claim is based on section 2–313 of the Kansas Uniform Commercial Code ("UCC"). *See* Kan.Stat.Ann. § 84–2–313(1)(a) ("[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."). "Express warranties are those for which the buyer bargained; they go to the essence of the bargain, being a part of its basis, and are contractual, having been created during the bargaining process." *Corral v. Rollins Protective Services Co.*, 240 Kan. 678, 685, 732 P.2d 1260, 1266 (1987) (quoting 67A Am.Jur.2d, Sales § 690). "It is clear that for there to be an express warranty there must be an explicit statement, written or oral, by the party to be bound prior to or contemporaneous with the execution of the contract." *Id.* To prevail on its claim, Sithon must prove that Mercury made an express warranty to Sithon regarding what speed the boats could achieve if equipped with the Mercury engines and that Sithon relied upon the warranty. *See Owens–Corning Fiberglas Corp. v. Sonic Development Corp.*, 546 F.Supp. 533, 541 (D.Kan.1982).

Mercury contends that it never made any express warranty to Sithon regarding the speed of the ferry boats. Sithon's only evidence on this point consists of the testimony of Mr. Vagianos of Sithon. Mr. Vagianos testified that Mr. Byquist of Holiday Mansion told him that an unnamed Mercury representative told Mr. Byquist that the boats equipped with Mercury engines could attain a cruising speed of 24 knots and a maximum speed of 28 knots. Mr. Byquist specifically denies making this statement to Mr. Vagianos. Mr. Vagianos' testimony regarding

what Mercury represented to Mr. Byquist constitutes inadmissible hearsay. Mr. Vagianos was not present when the Mercury representative allegedly made the statement to Mr. Byquist. Sithon offers the statement of the unnamed Mercury representative for the truth of the matter asserted. The statement, however, does not fall within any of the exceptions to the hearsay rule.

Even if the court considers Mr. Vagianos' testimony, Sithon has not produced sufficient evidence to show that *Mercury* ever made any explicit statements *to Sithon* regarding the speed of the boats as required for an express warranty claim. In this case, the absence of a direct relationship between Mercury and Sithon is fatal to Sithon's express warranty claim regarding speed of the boats. *See Wight v. Agristor Leasing,* 652 F.Supp. 1000, 1011 (D.Kan.1987); *AgriStor Leasing v. Meuli,* 634 F.Supp. 1208, 1219 (D.Kan.1986). Although an express warranty claim can be premised on an indirect relationship between the buyer and manufacturer, as when the buyer relies on a manufacturer's advertisement before purchasing the product from a third party, no such facts are present in this case. *See, e.g., Cricket Alley Corp. v. Data Terminal Sys., Inc.,* 240 Kan. 661, 665, 732 P.2d 719, 723 (1987) (citing comment to Kan.Stat.Ann. § 84–2–313). Moreover, Sithon has not alleged or presented any evidence to establish that Holiday Mansion was in any way acting as Mercury's agent with respect to the alleged representations of boat speeds made by Holiday Mansion.

Sithon argues that a disputed issue of fact exists because there is some evidence which indicates that Mercury made representations as to expected speed of boats to two other customers. Sithon argues that this evidence is contrary to Mercury's position that it does not discuss with its customers expected speeds of boats equipped with Mercury engines. Although Sithon's evidence raises a disputed issue as to whether Mercury has made representations regarding the speed of boats to some of its customers, the evidence does not create a disputed factual issue as to whether Mercury made any representations

to *Sithon* regarding the speed of the boats it purchased from Holiday Mansion.

For the above reasons, the court will grant summary judgment in favor of defendant Mercury on count I of Sithon's complaint.

### D. Breach Of Contract (Count IX).

Sithon alleges that Mercury breached its contract with Sithon to repair and correct the mechanical problems with the propulsion systems. Mercury first maintains that Sithon has failed to establish that a binding contract existed between the parties. As noted above, to form a binding contract, "there must be a meeting of the minds on all essential terms." *Albers,* 248 Kan. at 580, 809 P.2d at 1198. "To constitute a meeting of the minds there must be a fair understanding between the parties which normally accompanies mutual consent and the evidence must show with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract." *Sidwell,* 230 Kan. at 84, 630 P.2d at 1113 (internal quotation omitted).

Sithon claims that there is sufficient evidence for the trier of facts to find that a binding contract existed between Sithon and Mercury. The court has sifted through plaintiff's reference to 53 statements of fact and underlying documentation, which allegedly support its breach of contract claim. Only two of the statements of fact are even arguably relevant to the issue of whether a contract to correct and repair the propulsion systems existed. At most, plaintiff has presented evidence that (1) on June 5, 1995, Holiday Mansion sent Mercury a letter stating that Sithon is ready to go to the American Embassy and their lawyers regarding the problems with the boats, (2) a Mercury representative stated in a June 5, 1995 internal memorandum that Mercury is willing to do a customer relations repair on the boats at no cost to Sithon or Holiday Mansion, and (3) Mercury representatives told a Sithon representative in July 1995 that the new Bravo II engines would allow the engines to work at the correct RPM. Based on the record evidence, no reasonable juror could find the necessary "meeting of the minds" between Sithon and Mercury. There is no

evidence to show with reasonable certainty that the minds of the parties met upon the same matter and agreed upon the terms of the contract. *See Sidwell,* 230 Kan. at 84, 630 P.2d at 1113. Therefore, the court will grant summary judgment in favor of defendant Mercury on count IX of plaintiff's complaint.

### E. *Express Warranty Regarding Repairs (Count II).*

■ Sithon alleges that Mercury expressly warranted that it would correct all of the mechanical problems connected to the propulsion systems on Sithon's boats. Mercury argues that Sithon's claim fails because express warranties cannot arise unless there is a contract for sale. Express warranties, however, are not limited to contracts for sale and may be present in any type of contract. *See Corral,* 240 Kan. at 684, 732 P.2d at 1265. As noted above, "for there to be an express warranty there must be an explicit statement, written or oral, by the party to be bound prior to or contemporaneous with the execution of the contract." *Id.* In addition, plaintiff must establish that he relied upon the express warranty made by the defendant. *See Owens–Corning,* 546 F.Supp. at 541.

■ Sithon's express warranty claim regarding repairs fails for several reasons. First, Sithon has not presented any evidence of an explicit oral or written statement by Mercury of a warranty regarding repairs. Moreover, Sithon has not presented sufficient evidence to establish that Sithon and Mercury ever executed a contract. Although Kansas courts do not require a direct buyer-seller relationship as a predicate for an express warranty claim, there must be some contract. *See Corral,* 240 Kan. at 685, 732 P.2d at 1266 (contract required); *Professional Lens Plan, Inc. v. Polaris Leasing Corp.,* 234 Kan. 742, 751, 675 P.2d 887, 895 (1984) ("[T]he law permits a non-privity buyer to recover for direct economic loss if the remote seller has breached an express warranty."); *Fullerton Aircraft Sales & Rentals, Inc. v. Beech Aircraft Corp.,* 842 F.2d 717 (4th Cir. 1988) (applying Kansas law, privity of contract not required). Here, Sithon does not present evidence of any contract executed

subsequent or contemporaneous with the alleged express warranty to correct and repair the propulsion systems. With no contract, there are no express warranties. Finally, Sithon has not established that it took any actions in reliance on the alleged representations made by Mercury. The vague statement made by a Holiday Mansion representative that Sithon may go to its attorneys is insufficient to show that Sithon relied on any alleged warranty regarding repairs made by Mercury. Accordingly, defendant Mercury is entitled to summary judgment on count II of Sithon's complaint.

### F. *Covenant Of Good Faith And Fair Dealing (Count V).*

■ Sithon alleges that Mercury breached the covenant of good faith and fair dealing under section 1–203 of the Uniform Commercial Code. *See* Kan.Stat.Ann. § 84–1–203 ("Every contract or duty within this act imposes an obligation of good faith in its performance or enforcement."). Sithon argues that such a duty exists in this case because of the alleged contracts between Sithon and Mercury for the sale of the boats and for repair of the propulsion systems. As noted above, Sithon has not presented sufficient evidence to establish that either contract exists. Therefore, the court will grant summary judgment in favor of defendant on count V of plaintiff's complaint.

### G. *Implied Warranty Of Merchantability (Count III) And Fitness For A Particular Purpose (Count IV).*

Sithon alleges that Mercury breached an implied warranty of merchantability because the Mercury propulsion systems were not fit for the ordinary purpose of being used in passenger ferry boats. *See* Pl's Compl. ¶ 85. Sithon also alleges Mercury breached an implied warranty of fitness for a particular purpose because (1) Mercury knew at the time it installed the engines that an express requirement of the sales contract between Sithon and Holiday Mansion was that the ferry boats could travel at 24 knots cruising speed and 28 knots maximum speed and (2) Mercury knew at the time it repaired the engines in the Summer of 1995 that Sithon

required that the ferry boats could travel at 24 knots cruising speed and 28 knots maximum speed. *See* Pl's Compl. ¶¶ 95–97.

Mercury argues that all of Sithon's claims for implied warranties fail because Mercury disclaimed such warranties and there was no privity of contract between Sithon and Mercury. In addition, Mercury argues that Sithon failed to present sufficient evidence in support of its implied warranty of fitness claims because there is no evidence that Mercury knew of Sithon's speed requirements. The court will separately address each of Mercury's arguments.

1. *Disclaimer Of Implied Warranties.*

Mercury argues that all of Sithon's claims for implied warranties fail because Mercury properly excluded the implied warranties of merchantability and fitness pursuant to the Kansas UCC. *See* Kan.Stat.Ann. § 84–2–316(2). Mercury argues that no Kansas case has addressed the issue of how a remote manufacturer can exclude implied warranties. Mercury concludes that no "basis of the bargain" requirement can logically be imposed where there was no bargain between Sithon and Mercury. We agree that a basis of the bargain requirement seems inapplicable to disclaimers of implied warranties by remote manufacturers. The other requirements of the Kansas UCC, however, are relevant. To exclude the implied warranty of merchantability, a party must mention the word "merchantability" in the exclusion and, if the exclusion is in writing, it must be conspicuous. *See id.* To exclude the implied warranty of fitness, the exclusion must be in writing and conspicuous. *See id.*

■ Mercury's disclaimer is contained on page 87 of its operation and service manual. There is a title "Warranty Information" at the top of page 84 of the manual. The actual "Warranty Policy" is on pages 86 and 87 and contains eleven numbered paragraphs. The disclaimer at issue appears in the tenth paragraph. The disclaimer provides:

WARRANTIES OF MERCHANTABILITY AND FITNESS ARE EXCLUDED FROM THIS WARRANTY. IMPLIED WARRANTIES ARE LIMITED TO THE LIFE OF THIS WARRANTY. SOME STATES OR COUNTRIES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS OR THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION OR EXCLUSIONS MAY NOT APPLY TO YOU.

Mercury certainly meets the requirements of mentioning the word "merchantability" and having the exclusion in writing. The critical issue, however, is whether Mercury's disclaimer is conspicuous. The Kansas Uniform Commercial Code provides:

A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON–NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color.... Whether a term or clause is "conspicuous" or not is for decision by the court.

Kan.Stat.Ann. § 84–1–201(10). "In determining conspicuousness of a disclaimer, the court must consider the entire document." *Kelley Metal Trading Co. v. Al–Jon/United, Inc.,* 812 F.Supp. 185, 189 (D.Kan.1993) (citing *J & W Equipment, Inc. v. Weingartner,* 5 Kan.App.2d 466, 618 P.2d 862, 866 (1980)). "Contrasting type, ink color, and type size are relevant factors in the determination, but they are not the sole arbiters." *Kelley,* 812 F.Supp. at 189 (citing *J & W Equipment* ).

■ Although the disclaimer in the instant action is in capital letters, the court finds that the disclaimer is not conspicuous when viewed in light of the entire document. In particular, the exclusion appears on page 87 of an operation and maintenance manual, a document neither party signed and a document Sithon did not receive until after it agreed to purchase the Holiday Mansion boats equipped with Mercury engines. In addition, the disclaimer appears near the end of the warranty policy and is not set off from the text around it except by capital letters. We note that other parts of the manual have been set off with more distinctive features.

For the above reasons, the court finds that Mercury's disclaimers did not exclude the implied warranties of merchantability and fitness as to Sithon.

### 2. *Privity Of Contract.*

■ Mercury also argues that all of Sithon's implied warranty claims are barred because there is no privity of contract between Mercury and Sithon. "[I]mplied warranties are imposed by operation of law in Kansas on public policy grounds and without regard to whether the parties to the implied warranty are in 'privity' or whether the loss suffered is purely economic when the product is such that it would be inherently dangerous if defectively manufactured." *Fullerton,* 842 F.2d at 721 (4th Cir.) (applying Kansas law) (citing *Professional Lens,* 234 Kan. 742, 755, 675 P.2d 887, 898–99 (1984)); *see Boehm v. Fox,* 473 F.2d 445, 449 (10th Cir.1973) ("An implied warranty will be imposed by operation of law on the basis of public policy and privity of contract is not essential.") (citing *Evangelist v. Bellern Research Corp.,* 199 Kan. 638, 433 P.2d 380 (1967)).

As noted previously, there is no contractual privity between Sithon and Mercury. In addition, Sithon seeks economic losses in this action. Therefore, to withstand summary judgment on its implied warranty claims, Sithon must establish that engines used for passenger boats can be inherently dangerous if defectively manufactured. In *Professional Lens,* the alleged defective product was a computer and its hard disc component part, which the court found were not inherently dangerous products. 234 Kan. at 755, 675 P.2d at 898. In other cases, however, courts have held that an aircraft and an automobile tire are inherently dangerous products. *See Fullerton,* 842 F.2d at 718, 720–22 (alleged defect was "abnormal vibrations" on an aircraft); *B.F. Goodrich Co. v. Hammond,* 269 F.2d 501, 506 (10th Cir.1959) (tire allegedly did not protect against blow outs). Although no court apparently has decided this precise issue under Kansas law, we conclude that engines for passenger boats fall into the category of inherently dangerous products if defectively manufactured. Indeed, on at least two occasions, Sithon's boats equipped with

Mercury engines lost all propulsion power while at sea. The passengers on the boats were stranded and subject to the threat of personal injury.

■ Although privity of contract is not required in this case, Sithon has not provided any authority for the proposition that an implied warranty can arise without any contract at all. Under Kansas law, there must be some contract before an implied warranty of fitness for a particular purpose can arise. *See Corral,* 240 Kan. at 678, 732 P.2d at 1261, Syl. ¶ 6 (purpose of implied warranties is to protect party from loss where the subject matter *of the contract* fails to conform to the normal commercial standard or meet the party's known particular purpose). Indeed, section 315 of the Uniform Commercial Code provides that the implied warranty of fitness arises only "[w]here the seller *at the time of contracting* has reason to know any particular purpose for which the goods are required." Kan.Stat.Ann. § 84–2–315 (emphasis added).

■ Applying the above principles, the court finds that privity of contract is not required for Sithon to maintain its implied warranty of merchantability claim or its implied warranty of fitness claim at the time the engines were installed in the ferry boats. The existence of a sales contract between Sithon and Holiday Mansion may be sufficient to create implied warranties running from Mercury to Sithon. On the other hand, Sithon's claim that an implied warranty of fitness arose when Mercury repaired the propulsion systems in the Summer of 1995 is barred. The court determined previously that Sithon did not present sufficient evidence of a contract to repair between Sithon and Mercury. Without any contract in the Summer of 1995, no implied warranty of fitness could arise. The court also finds that Sithon has failed to present sufficient evidence in support of such a claim. *See infra,* section 3, Evidence Of Implied Warranty Of Fitness Regarding Speed Of The Ferry Boats. For the above reasons, the court will grant summary judgment in favor of defendant Mercury on Sithon's implied warranty of fitness claim with respect to Mercury's

repair of the propulsion systems in the Summer of 1995.

### 3. Evidence Of Implied Warranty Of Fitness Regarding Speed Of The Ferry Boats.

█ As noted above, Sithon alleges that an implied warranty of fitness from Mercury arose, both at the time the engines were installed and when they were subsequently repaired, that the ferry boats could travel at 24 knots cruising speed and 28 knots maximum speed. With respect to both of these claims, Sithon has failed to present sufficient evidence to establish either (1) Mercury had reason to know that Sithon required water craft that could travel 24 knots cruising speed and 28 knots maximum speed or (2) Mercury had reason to know that Sithon was relying on Mercury to select engines which would enable the water craft to achieve these specified speeds. *See* Kan.Stat.Ann. § 84-2-315. Accordingly, the court will grant summary judgment in favor of defendant Mercury on both of these claims.

█ Although the court finds in favor of defendant Mercury on the two specific claims for implied warranties of fitness regarding speed of the ferry boats, the court will not grant summary judgment in favor of defendant Mercury on count IV in its entirety. Liberally construing Sithon's complaint, the court finds that Sithon's claim under count III that Mercury breached an implied warranty of merchantability, *i.e.*, the propulsion systems were not fit for the *ordinary* purpose of being used in passenger ferries also may be pled as a claim under count IV that Mercury breached an implied warranty of fitness, *i.e.*, the propulsion systems were not fit for the *particular* purpose of being used in passenger ferries. The parties did not specifically address in their briefs whether use of the Mercury propulsion systems in passenger ferry boats is an ordinary or particular use of the systems. Therefore, the court will not dismiss count IV in its entirety at this time. For all of the above reasons, the court will deny Mercury's motion for summary judgment on counts III and IV with respect to Sithon's claim of an implied warranty that the Mercury propulsion systems were not fit for the purpose of being used in passenger ferries. The court will grant *summary* judgment in favor of Mercury, on count IV of Sithon's complaint with respect to Sithon's claim of implied warranties of fitness, both at the time the engines were installed and when they were subsequently repaired, that the water craft would achieve a cruising speed of 24 knots and a maximum speed of 28 knots.

### H. Fraud (Count VII).

█ Sithon alleges in its complaint that Mercury failed to inform Sithon, both at the time Mercury originally installed the propulsion systems and when it subsequently repaired the propulsion systems, that the boats sold could not reach speeds of 24 knots cruising speed and 28 knots maximum speed. *See* Pl's Compl. ¶¶ 126–27, 129–30. These two related fraud claims are based on the legal theory of fraud through silence. To prevail on a claim of fraud through silence, plaintiff must show by clear and convincing evidence:

(1) defendant had knowledge of material facts which plaintiff did not have and which plaintiff could not have discovered by the exercise of reasonable diligence;

(2) defendant was under an obligation to communicate the material facts to the plaintiff;

(3) defendant intentionally failed to communicate to plaintiff the material facts;

(4) plaintiff justifiably relied on defendant to communicate the material facts to plaintiff; and

(5) plaintiff sustained damages as a result of defendant's failure to communicate the material facts to the plaintiff. [citation omitted.]

*OMI Holdings, Inc. v. Howell,* 260 Kan. 305, 344–45, 918 P.2d 1274, 1299 (1996) (quoting *Lesser v. Neosho County Community College,* 741 F.Supp. 854, 863 (D.Kan.1990)). The court will analyze the above elements separately with respect to each fraud claim.

#### 1. *Disclosure Of Speeds At Time Of Engine Installation.*

Sithon first argues that Mercury failed to inform Sithon at the time Mercury installed the engines that the boats equipped with the Mercury propulsion systems could not reach speeds of 24 knots cruising speed and 28 knots maximum speed. Mercury argues that none of the evidence presented by Sithon in its opposition memorandum is relevant to this claim. The court agrees. Sithon has failed to present clear and convincing evidence in support of its fraud claim. First, Sithon has not presented any evidence that Mercury knew at the time the engines were installed what speeds the boats could achieve if equipped with the Mercury propulsion systems. Sithon also has not established that it could not have discovered this information by the exercise of reasonable diligence. Sithon likewise has failed to present any evidence in support of the other elements of a fraudulent omission claim. In particular, Sithon has failed to present any evidence that Mercury intentionally withheld any speed estimates of the boats from Sithon at the time of engine installation or that Sithon justifiably relied on Mercury to communicate this information. In light of the lack of evidence presented by Sithon, the court will grant summary judgment in favor of defendant Mercury on Sithon's claim that Mercury failed to disclose at the time Mercury installed the engines that the boats could not achieve a cruising speed of 24 knots and a maximum speed of 28 knots. *See* Pl's Compl. ¶¶ 126–27.

#### 2. *Disclosure Of Speeds At Time Of Repair.*

Sithon also contends that Mercury failed to inform Sithon at the time of repair in the Summer of 1995 that the boats equipped with the repaired Mercury propulsion systems could not reach speeds of 24 knots cruising speed and 28 knots maximum speed. Sithon has presented some evidence in support of this claim in its opposition memorandum. Sithon has presented evidence that (1) Mercury knew what speed the boats could achieve after repair and replacement of the propulsion systems, (2) Mercury knew that some of the repairs and changes would reduce the cruising speed of the boats, and (3) Mercury failed to advise Sithon of this information. In their voluminous briefs, neither party specifically discussed this claim factually or with respect to the legal elements of a fraudulent omission claim. Therefore, the court will deny defendant Mercury's motion for summary judgment on this claim.

Although the court will not grant summary judgment on Sithon's second fraud claim, the court doubts that the record evidence would be sufficient to withstand a properly supported motion for judgment as a matter of law. In particular, there does not appear to be any record evidence which establishes that (1) Sithon could not have discovered the information regarding speed of the boats by the exercise of reasonable diligence or (2) Sithon justifiably relied on Mercury to communicate such information.

Mercury argues in the alternative that Sithon should be required to replead its fraud claim with particularity. The court finds that Sithon's complaint provides Mercury sufficient notice of the particular fraud allegation. The requirement that fraud shall be stated with particularity primarily is to allow the defendant to prepare an adequate responsive pleading. *See Todaro v. Orbit Int'l Travel, Ltd.,* 755 F.Supp. 1229, 1234 (S.D.N.Y.1991); *United Nat'l Records, Inc. v. MCA, Inc.,* 609 F.Supp. 33, 38 (N.D.Ill. 1984). By analogy to the time requirements for pleading defenses under rule 12, a rule 9(b) objection is waived unless made as a separate motion prior to or concurrent with the filing of a responsive pleading. *See Todaro,* 755 F.Supp. at 1234; *MCA,* 609 F.Supp. at 38–39. Here, Mercury was on sufficient notice of Sithon's fraud allegations to prepare a detailed answer. Although Mercury raised a general objection under rule 9(b) in its answer, there is no evidence to suggest that Mercury was precluded from drafting an adequate responsive pleading because of the lack of particularity in Sithon's fraud claims. Of course, Sithon may be required to state its fraud claim with more particularity in the pretrial order.

### 3. Sithon's New Fraud Theories.

Sithon alleges numerous new fraud theories in its opposition brief and its surreply memorandum. In sum, Sithon argues that Mercury withheld information of the shortcomings of the propulsion systems, knew that it could never repair or improve the performance of the propulsion systems, and nevertheless assured Sithon that it would correct the performance problems. Sithon argues that it relied on Mercury's repeated assurances and accordingly suffered the destruction of its business. Sithon cannot change its fraud theory at this late date. At this point, there is no pretrial order in the case. Pursuant to the Scheduling Order, however, any motions to amend the pleadings by the plaintiff were due on January 2, 1997. Plaintiff has not filed any motions to amend or motions to extend the deadline for filing motions to amend. Therefore, plaintiff's fraud claims are governed by its complaint. The court will not consider the new fraud theories presented in plaintiff's opposition memoranda. Plaintiff cannot present claims that are "moving targets," particularly with respect to claims of fraud which are governed by a heightened standard of pleading.

In a footnote, Sithon requests leave to amend its fraud claims to add several new fraud theories. The court will deny Sithon's request for the reasons set forth above. In addition, Sithon has failed to comply with rule 15.1 of the Rules of Practice for the District of Kansas governing motions to amend the pleadings. In particular, Sithon failed to set forth a concise statement of the amendment sought and failed to provide a copy of the proposed amended complaint to the court. Without briefing on the motion or a copy of the proposed amended complaint, the court cannot analyze many of the factors relevant to motions to amend, such as Sithon's delay in seeking the amendment or any prejudice to Mercury. See Castleglen, Inc. v. Resolution Trust Corp., 984 F.2d 1571, 1585 (10th Cir.1993). Based on the record before us, however, we note that any proposed amendment by Sithon to add the referenced fraud claims likely would be futile. Sithon has not set forth facts which establish that (1) Mercury was under an obli-

gation to communicate the material facts to Sithon, (2) Mercury intentionally failed to communicate the material facts to Sithon, or (3) Sithon justifiably relied on Mercury to communicate the facts to Sithon. For the above reasons, Sithon's request to amend its complaint is denied.

### I. Strict Liability In Tort (Count VI).

Sithon alleges that the Mercury propulsion systems were defective and unreasonably dangerous to Sithon's boats. Sithon, as the ultimate purchaser of the propulsion systems, claims that Mercury is responsible for any damages from the propulsion systems under the legal theory of strict liability. Mercury moves for summary judgment on the ground that Sithon suffered only economic loss and therefore cannot recover in tort.

In Kansas, "an action for damages from a product's qualitative defects alone without proof of the product's dangerousness cannot sound in tort." *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1581 (10th Cir.1984); *see Winchester v. Lester's of Minnesota, Inc.*, 983 F.2d 992, 996 (10th Cir.1993); *AgriStor Leasing v. Meuli*, 634 F.Supp. 1208, 1217 (D.Kan.1986). Thus, the repair or replacement of a defective product itself is considered economic loss for which a plaintiff generally cannot recover in tort. *See Winchester*, 983 F.2d at 996 (citing *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871, 106 S.Ct. 2295, 2302, 90 L.Ed.2d 865 (1986)). Here, Sithon seeks recovery for damage to the propulsion systems and the water craft, as well as lost profits resulting from the failure of the propulsion systems.

Although damage to a defective product itself often is characterized as economic loss, courts have allowed recovery of such losses if the product was "unreasonably dangerous." *See Champlain Enterprises. Inc. v. United States*, 945 F.Supp. 468, (N.D.N.Y.1996) (applying Kansas law) (plaintiff can recover for damage to the aircraft if plaintiff establishes that the aircraft was unreasonably dangerous); *Fordyce Concrete, Inc. v. Mack Trucks, Inc.*, 535 F.Supp. 118, 126 (D.Kan.1982) (physical damage upon a defective product or upon other property resulting from an unrea-

sonably dangerous defective product is recoverable); *see also Elite Professionals, Inc. v. Carrier Corp.,* 16 Kan.App.2d. 625, 625, 633, 827 P.2d 1195, 1197, 1202 (1992) (damage to meat inside refrigeration unit did not constitute economic loss, issue of fact as to whether truck refrigeration unit was unreasonably dangerous); *Mississippi Power & Light Co. v. Branson Aircraft Corp.,* 797 F.Supp. 871, 873 (D.Colo.1992) (applying Kansas law) ("tort recovery for injury to the defective product is not barred by the economic loss rule if the plaintiff is attempting to recover property damages, as distinguished from purely economic damages."). In *Fordyce,* we held that "the Kansas Supreme Court, if faced with the question before us, would once again follow the explicit language of § 402A [of the Restatement (Second) of Torts] and allow plaintiff to recover for physical damage to property resulting from an unreasonably dangerous defective product regardless of whether the damage is inflicted upon the defective product or upon other property." In *Fordyce,* we relied on Kansas cases that consistently interpreted section 402A broadly, permitting expansive recovery under a strict liability in tort theory. *See id.; Kennedy v. City of Sawyer,* 228 Kan. 439, 445–46, 618 P.2d 788, 794 (1980) (imposing liability for property damage incurred by bystanders or third parties under strict liability "is based on a desire to achieve maximum protection for the injured party and to promote the public interest in discouraging the marketing of products having defects that are a menace to the public.").

We now must decide whether Sithon has presented sufficient evidence that Mercury's propulsion systems were unreasonably dangerous to survive summary judgment. The Kansas Supreme Court has found that a condition is unreasonably dangerous "if it is dangerous when used in the way it is ordinarily used considering the product's characteristics and common usage, and is dangerous to the extent beyond that which would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics." *Jenkins v. Amchem Prods., Inc.,* 256 Kan. 602, 623–24, 886 P.2d 869, 882 (1994), *cert. denied,* — U.S. ——, 116 S.Ct.

80, 133 L.Ed.2d 38 (1995). Mercury has not offered any evidence to controvert Sithon's evidence that its passenger boats lost all propulsion power on two occasions and broke down while at sea. On one occasion, the boat filled with passengers broke down in the middle of the night. The passengers were stranded, frightened, and many of them were screaming because of the threat of personal injury. Based on the record evidence, we cannot conclude as a matter of law that the Mercury propulsion systems were not unreasonably dangerous. If Sithon establishes at trial that the Mercury propulsion systems were unreasonably dangerous, Sithon may be able to recover on its strict liability claims for damages to the propulsion systems and its water craft. Neither party has addressed whether Sithon also can recover lost profits in the event it can establish that the propulsion systems were unreasonably dangerous. In light of the absence of briefing on this point, the court will not decide the issue at this time. For all of the above reasons, the court will deny Mercury's motion for summary judgment as to count VI of Sithon's complaint.

## II. Mercury's Motion For Summary Judgment On Holiday Mansion's Cross–Claim.

Mercury has filed a motion for summary judgment on Holiday Mansion's cross-claim. Holiday Mansion has failed to file a response to this motion. Pursuant to rule 7.4 of the Rules of Practice for the District of Kansas, the court will consider defendant's motion as uncontested. Ordinarily, such motions are granted without further notice.

### A. *Factual Background.*

For purposes of defendant's motion, the following is a brief summary of the material facts that are uncontroverted, deemed admitted, or where controverted viewed in the light most favorable to the non-movant, pursuant to Federal Rule of Civil Procedure 56 and District of Kansas Rule 56.1.

Mr. Byquist, Holiday Mansion's vice president and individual in charge of the day-to-day operations of the company, testified that

he did not know if Holiday Mansion's allegation that Mercury represented what specific speeds Sithon's boats could achieve was true or the basis of the allegation. Mr. Byquist also testified that (1) no one at Mercury told anyone at Holiday Mansion that the boats sold to Sithon would travel 24 knots cruising speed or 28 knots maximum speed, or at any speed, when equipped with the Mercury stern drive engines; (2) no one at Mercury endorsed using the Mercury stern drive engines with the boats sold to Sithon; and (3) no one at Mercury told Holiday Mansion that the boats sold to Sithon would be a proper application for the Mercury stern drive engines. Mr. Brown of Holiday Mansion faxed a letter to Sithon on January 3, 1995, representing that the boats equipped with Mercury engines would have a cruising speed of 24 knots and a maximum speed of 28 knots. Mr. Brown testified that he had no factual basis for making the representation and that he did not consult with anyone at Holiday Mansion or Mercury before making the representation.

B. *Breach Of Express Warranty (Count I).*

█ Holiday Mansion alleges that Mercury expressly warranted that the engines would reasonably and properly perform. As noted previously, to prevail on an express warranty claim, a party must establish (1) there was an explicit written or oral statement of warranty prior to or contemporaneous with the execution of a contract and (2) reliance on the warranty statement. *See Owens–Corning*, 546 F.Supp. at 541.

The only record evidence of an express warranty by Mercury to Holiday Mansion is contained in Mercury's operation and service manual. The warranty provides in relevant part that the Mercury stern drive power package, inboard engine, and accessories are warranted "to be free from defects in material and workmanship. This warranty shall apply only to pleasure craft and light-duty craft applications." Holiday Mansion has not offered any evidence suggesting either that (1) the Mercury engines and stern drives failed because of a defect in materials or workmanship or (2) the Mercury propulsion

systems were used in a "light-duty craft" application. In the absence of such evidence, Holiday Mansion cannot establish that Mercury breached its express warranty. Indeed, the only record evidence on this point suggests that Mercury fulfilled its warranty obligations by supplying replacement engines and drive units for the boats at virtually no cost to Sithon or Holiday Mansion. Therefore, the court will grant summary judgment in favor of Mercury on count I of Holiday Mansion's cross-claim.

C. *Negligent Misrepresentation (Count II).*

█ Holiday Mansion alleges that Mercury negligently misrepresented that the 49-foot passenger boats, "when loaded with passengers, fuel and other miscellaneous items, could reasonably and appropriately operate for needed periods of time at cruising speed in excess of 20 knots [ ] with a maximum speed in excess of 24 knots." To prevail on its claim, Holiday Mansion must establish: (1) Mercury supplied false information to Holiday Mansion to benefit and guide Holiday Mansion in a business transaction; (2) Mercury intended to influence the transaction by providing the information; (3) Mercury was negligent in obtaining or communicating the information; and (4) Holiday Mansion reasonably relied and acted upon the information which caused Holiday Mansion to suffer damages. *See Mahler v. Keenan Real Estate, Inc.,* 255 Kan. 593, 604, 876 P.2d 609, 616 (1994) (adopting section 552 of the Restatement (Second) of Torts).

Holiday Mansion has not presented any evidence that Mercury ever made the alleged representation regarding speed. Indeed, Holiday Mansion's representatives testified that no such representation was made. Mr. Byquist, Holiday Mansion's vice president and individual in charge of the day-to-day operations of the company, testified that he did not know if Holiday Mansion's allegation was true or the basis of the allegation. Mr. Byquist also testified that (1) no one at Mercury told anyone at Holiday Mansion that the boats sold to Sithon would travel 24 knots cruising speed or 28 knots maximum speed, or at any speed, when equipped with the

Mercury stern drive engines; (2) no one at Mercury endorsed using the Mercury stern drive engines with the boats sold to Sithon; and (3) no one at Mercury told Holiday Mansion that the boats sold to Sithon would be a proper application for the Mercury stern drive engines. Finally, Mr. Brown of Holiday Mansion faxed a letter to Sithon on January 3, 1995, representing that the boats would have a cruising speed of 24 knots and a maximum speed of 28 knots. Mr. Brown testified that he had no factual basis for making the representation and that he did not consult with anyone at Holiday Mansion or Mercury before making the representation. In light of the above evidence, no reasonable juror could find that Mercury supplied Holiday Mansion with false information. Accordingly, the court will grant summary judgment in favor of Mercury on count II of Holiday Mansion's cross-claim.

### D. *Negligence (Count III).*

■■■ Holiday Mansion alleges that Mercury "failed to use appropriate and reasonable care in selecting the Mercury engines and stern drives it did, which would not and could not operate at the desired cruising and maximum speeds." Holiday Mansion also alleges that Mercury "negligently and improperly failed to undertake and perform any and all testing that was needed to ascertain and make certain that its representations were reasonable and appropriate." Holiday Mansion has not presented any evidence in support of these allegations. First, the uncontested evidence establishes that no one at Mercury represented to Holiday Mansion that the boats could achieve certain cruising or maximum speeds and that no one at Mercury was aware of the desired cruising and maximum speeds. Moreover, Holiday Mansion has not presented any evidence suggesting that Mercury was negligent in selecting the engines for the passenger boats. For the above reasons, the court will grant summary judgment in favor of Mercury on count III of Holiday Mansion's cross-claim.

### E. *Common Law Indemnity (Count IV).*

■■■ Holiday Mansion claims that it is entitled to indemnity from Mercury for any judgment that may be entered against Holiday Mansion on Sithon's claims. Mercury argues that Holiday Mansion has no legal right to indemnity under Kansas law. There is no evidence of any indemnity agreement between Holiday Mansion and Mercury. In addition, "the statutory adoption of comparative negligence in Kansas has had the effect of abrogating the concept of indemnification based on the dichotomy of active/passive negligence." *Haysville U.S.D. No. 261 v. GAF Corp.,* 233 Kan. 635, 642, 666 P.2d 192, 199 (1983) (citation omitted). In the absence of any factual or legal basis for indemnification, the court will grant summary judgment in favor of defendant Mercury on count IV of Holiday Mansion's cross-claim.

IT IS THEREFORE ORDERED that defendant Mercury Marine's motion for summary judgment on plaintiff's complaint (Doc. # 73) is granted as to counts I, II, V, VIII, and IX, granted in part and denied in part as to counts IV and VII as discussed herein, and denied as to counts III and VI.

IT IS FURTHER ORDERED that defendant Mercury Marine's motion for summary judgment on defendant Holiday Mansion's Cross–Claim (Doc. # 124) is granted.